## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COREY ROBINSON, | ) | 3:23-cv-1631 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE 1, CS DUMAS, AND DHO | ) | |
| JOHN DOE, | ) | |
| *Defendants*. | ) | April 16, 2024 |

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Corey Robinson, a sentenced[1] inmate currently incarcerated within the Connecticut Department of Correction ("DOC"), filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights in connection with being placed in a restricted housing unit ("RHU") upon his entry into DOC custody in March of 2023. He names three defendants:  Defendant John Doe 1, Defendant CS Dumas, and Defendant DHO John Doe.  Plaintiff seeks damages from Defendants and "any relief the judge sees fit."

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted

---

[1] Information on the Department of Correction's website shows that Plaintiff was sentenced on October 19, 2023. *See* Conn. Dep't of Corr., Offender Information Search, www.ctinmateinfo.state.ct.us (last accessed April 16, 2024). The Court may take judicial notice of matters of public record.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).  Although he is now sentenced, the incident underlying his claim occurred in March 2023, while he was a pretrial detainee.

an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows:  only Plaintiff's Fourteenth Amendment substantive and procedural due process claims against Defendant John Doe 1 and Defendant DHO Doe may proceed past initial review.

## I.      FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Upon entering DOC custody on March 1, 2023, at Hartford Correctional Center, Plaintiff was escorted to segregation.  Compl., ECF No. 1 ¶ 1.  When he asked Defendant Doe 1 why he was in segregation, Defendant Doe 1 stated that he would find out soon.  *Id.* ¶ 2.  While in segregation, Plaintiff was not permitted to use the phone every day, was not allowed to order from the commissary, and was allowed only one hour of recreation.  *Id.* ¶ 3.

Plaintiff attended a hearing where Defendant DHO Doe found him "guilty" based on social media posts Plaintiff made before he was in custody.  *Id.* ¶ 4.  Plaintiff was then transferred to a housing unit with active gang members, and required to complete the Security Risk Group ("SRG") program.  *Id.* ¶¶ 5–6.  There, Plaintiff's phone calls were limited, and he had no access to electronic messages, visits, programming, religious services, or a law library; further, he was subjected to a commissary limit and shakedowns.  *Id.* ¶ 8.  He remained in that status for nearly one year without receiving a disciplinary ticket.  *Id.* ¶ 9.

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## II.    DISCUSSION

The Court construes the complaint as bringing claims for damages against Defendants in their individual capacities only, since claims for damages against state employees acting in their official capacities are prohibited by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Additionally, since Plaintiff appears to no longer be incarcerated at Hartford Correctional Center,[3] any injunctive relief directed against officials there, such as Defendants, would be moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).

For the following reasons, the Court dismisses Plaintiff's First Amendment claim, but will allow him to proceed with Fourteenth Amendment substantive and procedural due process claims against Defendant Doe 1 and Defendant DHO Doe only.

### A.  First Amendment

Plaintiff contends that being placed in restrictive housing and designated an SRG member based on his past social media posts violated his First Amendment rights.  The Court treats this as a claim that Plaintiff was retaliated against for posting on social media.

To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Without any detailed information about what Plaintiff posted on social media, the Court will assume that Plaintiff's social media post reviewed by Defendant DHO Doe in the hearing satisfies the first requirement of protected speech.

---

[3] Plaintiff's mailing address on the docket is at Corrigan-Radgowski Correctional Center.  The DOC's online inmate locator states that Plaintiff's current facility is Osborn Correctional Institution.  *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=391093 (last accessed April 16, 2024).

Plaintiff has also sufficiently alleged the second element, adverse action, for purposes of initial review.  The Second Circuit has defined "adverse action" as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Zelnik v. Fashion Inst. Of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)).  Whether a particular action is considered adverse depends on the totality of the circumstances.  *See Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (explaining the definition of adverse action "is not static across contexts," but "must be tailored to the difference circumstances in which retaliation claims arise" and "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens").  Plaintiff describes the conditions in segregation to which he was subjected as a pretrial detainee as "harsh treatment, limited Phone calls, no e messages, No Visits + set commissary limit, excessive shakedown, No programming, no religious service, no law library."  ECF No. 1 ¶ 8.  For purposes of initial review, the Court will also assume that these conditions constitute an adverse action.

But Plaintiff has not sufficiently alleged the final, causation element.  Several recent decisions in this district have held that allegations that prison officials relied on social media posts to determine whether an inmate was an SRG member do not satisfy the causal requirement to state a valid First Amendment retaliation claim.  *See, e.g.*, *Benway v. Aldi*, No. 3:19-cv-208 (VAB), 2020 WL 4433561, at *6–7 (D. Conn. July 31, 2020) (after allowing First Amendment retaliation claim based on SRG placement due to social media posts to proceed on initial review, later dismissing plaintiff's First Amendment retaliation claims where he only alleged that the defendants "used the information from his social medial posting as evidence to support

his Security Risk Group designation" and thus did "not raise[] an inference that he was retaliated against on the basis of his speech"); *Martinez v. Payne*, No. 3:20-cv-231 (JAM), 2020 WL 3630422, at *4 (D. Conn. July 4, 2020) ( "In the absence of an allegation that they sought to punish or retaliate against [him] simply for engaging in First Amendment-protected expression (or for the content of that expression apart from what it suggested about [the plaintiff's] gang affiliation), the complaint does not plausibly suggest a First Amendment retaliation claim."); *Caves v. Payne*, No. 3:20-cv-15 (KAD), 2020 WL 1676916, at *4 (D. Conn. Apr. 6, 2020) (finding that the plaintiff failed to allege a causal connection when he "was designated an SRG member because he posted information determined to be gang-related and therefore indicative of gang membership").

The Court finds these cases persuasive, and similarly concludes that Plaintiff has failed to allege the "causation" element of a retaliation claim.  Prison officials have a legitimate penological interest in ensuring the safety and security of the prison.  As the court in *Caves* noted, "[t]he First Amendment . . . does not prohibit the evidentiary use of speech . . . ."  *Caves,* 2020 WL 1676916, at *4 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)); *see also United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (denying First Amendment challenge to admission of rap videos in criminal trial because the First Amendment does not "prohibit the evidentiary use of speech" (quoting *Mitchell*, 508 at 489)).  Liberally construed, Plaintiff's allegations show only that Defendant DHO Doe used information from his social media posts as evidence to support his SRG classification.  Thus, Plaintiff has not alleged facts showing that he was retaliated against on the basis of his speech; there are no allegations that he was designated an SRG member to punish him for posting on social media or to deter him from doing so in the future.  *See Smith v. Papoosha*, No. 3:19cv206 (MPS), 2020 WL 5231307, at *2

(D. Conn. Sept. 2, 2020) (dismissing retaliation claim based on social media post because plaintiff alleged no facts showing that SRG designation was made merely because he posted on social media).  As Plaintiff fails to allege facts supporting an essential element of a First Amendment retaliation claim, this claim is dismissed.

### B.  Fourteenth Amendment

Plaintiff also brings claims for violations of his Fourteenth Amendment rights based on his transfer to the SRG unit.[4]  The Court finds that Plaintiff has adequately alleged substantive and procedural due process claims for purposes of initial review, which may proceed against Defendant Doe 1 and Defendant DHO Doe only, not Defendant CS Dumas.

The U.S. Supreme Court has held that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Darnell*, 849 F.3d 29 ("[P]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise."). Nonetheless, a pretrial detainee's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001) (internal quotation marks and citations omitted).

#### 1.  Substantive Due Process

To establish a substantive due process claim, a pretrial detainee must allege facts tending to show that a condition was "imposed for the purpose of punishment," either directly by offering proof of such intent, or indirectly by indicating that the condition is not reasonably related to a legitimate governmental purpose, such as institutional security.  *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell*, 441 U.S. at 538)

---

[4] The Due Process Clause of the Fourteenth Amendment applies to Plaintiff's claims related to his conditions of confinement because he was a pretrial detainee at the time of the events in question.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

(hereafter "*Allah*").  A punitive intent may be inferred if the conditions of confinement are "otherwise arbitrary."  *See Banks v. Michaud*, No. 3:20-cv-00326 (JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) (citing *Allah*, 876 F.3d at 55); *see also Bell*, 441 U.S. at 539 (holding that if conditions of confinement are "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees").

The Court finds that Plaintiff's allegations may suffice to demonstrate that his SRG designation was punitive in nature, for purposes of initial review.  The Second Circuit has "found measures similar to Administrative Segregation not to violate substantive due process where [(1)] prison officials subjected pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and [(2)] where the measures were not excessive in relation to that purpose."  *Allah*, 876 F.3d at 55–56.  By contrast, Plaintiff alleges two circumstances that may raise the inference of punitive conditions of confinement while on pretrial detention.  First, Plaintiff alleges that an individualized inquiry was not completed because he was escorted to a restricted housing unit immediately upon his entry into DOC custody, and the hearing officer reviewed only outdated social media posts.  *See Shelton v. Payne*, No. 3:21cv637 (KAD), 2021 WL 3190398, at *4 (D. Conn. July 28, 2021) (holding that immediate placement in SRG on the basis of "old" Facebook posts creates an inference that the plaintiff was being punished in violation of his substantive due process rights).  Second, Plaintiff alleges that he was subjected to highly restrictive conditions in that unit which may be excessive in relation to any purported governmental purpose of safety and security.  *See Allah*, 876 F.3d at 58 (concluding that conditions of administrative segregation, including limitations of one 15-minute phone call, one 30-minute, no-contact visit with immediate family members per week,

five pieces of mail in cell, and no television, were not reasonably related to legitimate governmental objectives); *Vanterpool v. Harris*, No. 3:20-cv-140 (JAM), 2020 WL 13017257, at *5 (D. Conn. Sept. 4, 2020) ("[I]t is not evident how conditions like limiting telephone calls and commissary spending [and] limiting access to programing . . . enhance prison safety or security.").  Therefore, Plaintiff may proceed with a substantive due process claim.

## 2. *Procedural Due Process*

Because Plaintiff may have a liberty interest in being free from the above conditions, the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1973), may apply.  *See Woolard v. Santiago*, No. 3:19cv1256 (VLB), 2020 WL 2079533, at *7 (D. Conn. Apr. 30, 2020) (finding the procedural protections set forth in *Wolff* applied when plaintiff was designated an SRG member on the basis of Facebook posts and activity prior to his arrest).  The *Wolff* procedural protections include "written notice of the charges at least twenty-four hours in advance," "the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee," and "a written statement including evidence relied upon by the hearing officer in reaching his or her decision and the reasoning for the disciplinary action."  *Id.* (citing *Wolff*, 418 U.S. at 564–66).

The U.S. Supreme Court held in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985), that in order to "meet the minimum requirements of procedural due process," a prison hearing officer's findings must also be supported by 'some evidence.'"  This requirement "help[s] to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens," and follows logically from *Wolff*.  *See id.* at 455 ("Because the written statement mandated by *Wolff* requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some

evidentiary basis for a decision . . . will not impose significant new burdens" nor "subject [officials] to second-guessing upon review."). The deferential standard is met at a SRG designation hearing when "there was some evidence from which the conclusion of the administrative tribunal could be deduced"; it "does not require examination of an entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Fluker v. Kelly*, No. 23-307, 2024 WL 506578, at *2 (2d Cir. Feb. 9, 2024) (summary order) (quoting *Hill*, 472 U.S. at 445).

The Court cannot find on the current complaint that the procedural protections set forth in *Wolff* may have been violated. Plaintiff only describes how the decision to place him in the SRG unit was made at a hearing and based upon prior social media posts. Plaintiff does not allege that he failed to receive any of the *Wolff* protections. Therefore, Plaintiff failed to plausibly allege a Fourteenth Amendment procedural due process claim against any Defendant under *Wolff*.

Nonetheless, Plaintiff may proceed with a procedural due process claim on the theory that there was insufficient evidence to support his SRG designation as required by *Hill*. Although additional information about the social media activity that Defendant DHO Doe reviewed will be necessary to determine whether the SRG designation was supported by sufficient evidence, Plaintiff had adequately pleaded this claim for purposes of initial review. *See Myers v. Semple*, No. 3:18-CV-505, 2018 WL 3553336, at *4–5 (D. Conn. July 23, 2018) (allowing plaintiff to proceed past initial review with procedural due process claim based in part on insufficient evidence to support SRG designation); *Fluker v. Kelly*, No. 3:20-CV-00179-SVN, 2022 WL 17830730, at *8–9 (D. Conn. Dec. 21, 2022) (granting summary judgment for defendant after plaintiff was allowed to proceed with insufficient evidence claim on initial review), *aff'd*, 2024 WL 506578 (2d Cir. Feb. 9, 2024) (summary order).

3. *Defendant Dumas*

Finally, the Court finds that Plaintiff has failed to allege any due process claim against Defendant CS Dumas.  Plaintiff has not alleged any facts suggesting that Defendant Dumas had direct personal involvement in the alleged substantive or procedural due process violation.  *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020); *see also Shelton*, 2021 WL 3190398, at *5 (dismissing defendant when plaintiff failed to allege any actions by defendants related to his placement in punitive conditions of confinement).  Plaintiff attaches as an exhibit a grievance form addressed to "unit manager or C.S. Dumas" regarding his SRG placement.  *See* Nov. 13, 2023, Inmate Request Form, ECF No. 1 at 10.  But this alone does not suffice to show personal involvement.  *See Sherman v. Doe*, No. 3:22-cv-1159 (VLB), 2023 WL 2837590, at *8 (D. Conn. Apr. 7, 2023) (collecting cases for proposition that official's receipt of grievance alone does not suffice to show personal involvement).  Plaintiff's claims against Defendant Dumas are dismissed.[5]

**ORDERS**

The following claims are **DISMISSED**:  (1) Plaintiff's First Amendment claim against all Defendants; and (2) Plaintiff's Fourteenth Amendment substantive and procedural due process claims against Defendant CS Dumas.  The case may proceed on Plaintiff's Fourteenth Amendment substantive and procedural due process claims against Defendant John Doe 1 and Defendant DHO Doe only in their individual capacities.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

---

[5] Plaintiff attaches a second grievance form which references a "unit manager" who was present at his SRG hearing, in addition to the DHO.  *See* Nov. 13, 2023, Inmate Grievance Form, ECF No. 1 at 12.  If Plaintiff seeks to bring a claim against this unit manager, or this "unit manager" was CS Dumas, he must specify so in his amended complaint—should he choose to file one.

(1) If Plaintiff wishes to proceed on his Fourteenth Amendment substantive and procedural due process claims against Defendant John Doe 1 and Defendant DHO Doe in their individual capacities **only**, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **May 16, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph.  The Court will then begin the effort to serve process on these defendants in their individual capacities.  The Court notes, however, that service cannot be ordered on the Doe Defendants without those Defendants' full names and current addresses.  Accordingly, if Plaintiff chooses the option of proceeding with this suit as described in this paragraph, he will need to undertake efforts to identify the full names of the Doe Defendants.  The Court will then obtain mailing addresses for those individuals.  If he chooses to proceed with this suit as described in this paragraph, he must provide the full names to the Court by filing a notice with that information by **July 15, 2024**.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted that have been dismissed above without prejudice, in order to attempt to state a viable claim, he may file an Amended Complaint by **May 16, 2024**.  An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.  The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process of any defendants named therein.  If Plaintiff elects to file an Amended Complaint, the original Complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **May 16, 2024**, the Court will presume that Plaintiff wishes to proceed on the original Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**<u>Changes of Address.</u>**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

SO ORDERED at Hartford, Connecticut, this 16th day of April, 2024.


 /s/ *Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE